# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JERRY RODRIGUEZ, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. SA-18-CV-248-XR |
| | § | |
| BEXAR COUNTY, JOE CAVAZOS, | § | |
| MARJORIE SCOGIN, and | § | |
| JOHN DOE NO. 1, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

On this date, the Court considered the Motion to Dismiss filed by Marjorie Scogin and the Motion to Dismiss filed by Bexar County and Joe Cavazos.

## Background

Plaintiff Jerry Rodriguez brings this action against Bexar County and Defendants Joe Cavazos, Marjorie Scogin, and John Doe No. 1, in their individual and official capacities, under 42 U.S.C. § 1983 for violations of his constitutional rights while he was a pretrial detainee in the Bexar County Jail. Plaintiff alleges that on or about March 22, 2016, while housed in the jail, he was involved in a physical altercation with his cell mate, in which he "suffered an injury to his nose, along with lower back and neck pain, which was ultimately diagnosed as an acute infection of epidural fluid collected in his L2-L3 and L5-S1 level vertebrae as the result of a hematoma or abscess." Compl. ¶ 9. Plaintiff alleges that Deputy Cavazos responded to the altercation, and gave him a filthy cleaning rag to wipe the blood from his face. Although Plaintiff was taken to the Medical Bay that night, Plaintiff alleges that Cavazos did not inform any trained healthcare personnel that he had treated Rodriguez's

wounds with a floor rag and, as a result, Plaintiff was not provided reasonable medical care for his injury, except for anti-fungal cream for his athlete's foot. *Id.* ¶ 10.

Plaintiff further alleges that, as his condition worsened over the following days, John Doe No. 1 intentionally delayed the transmission of Plaintiff's sick-call request forms to healthcare professionals at the Jail, and Plaintiff was not brought into the Medical Bay until March 30. Plaintiff asserts that John Doe No. 1 "is a deputy with the Bexar County Sheriff's Office" and "was the officer assigned to [Plaintiff's] 'pod' at the Bexar County Jail." Compl. ¶ 5. He further alleges that Doe No. 1 "disregarded Plaintiff's obvious physical incapacity, increasing symptoms of paralysis and infection" and "disciplined Plaintiff for his perceived malingering by forcing Plaintiff to eat off the floor if he could not stand." *Id.*

Plaintiff asserts that, once he was brought to the Medical Bay, Defendant Scogin ordered an x-ray, but it did not reveal any fractures, and he was returned to his cell. Plaintiff states that at no time was he presented or referred to a licensed physician for follow-up or diagnostic orders.

Plaintiff alleges that he collapsed on the floor of the day room on April 3, resulting in a "code 1" response by jail staff and an escort to the Medical Bay. Plaintiff alleges that a John Doe No. 2 believed he was malingering, and conveyed this to a social worker, who also expressed skepticism over Plaintiff's complaints. Plaintiff alleges that John Doe No. 2 was visibly irritated at Plaintiff for falling on the floor, and threatened to assault him if he did not stand up. That afternoon, Plaintiff was placed in the infirmary for blood pressure monitoring and then taken to University Hospital, where an MRI revealed that he had an epidural abscess, and blood cultures revealed that he had a methicillin-sensitive staphylococcus aureus

infection. Plaintiff asserts he underwent cervical and thoracic laminectomy and received antibiotic treatment, and that he has sustained permanent, bilateral paralysis in his lower extremities as well as substantial loss of strength, coordination, and use of his upper extremities.

Plaintiff brings claims against Bexar County, Cavazos, Scogin, and John Doe No. 1 under the Fifth, Eighth, and Fourteenth Amendments for unlawfully withholding medical services and acting with deliberate indifference to his medical needs. Plaintiff also asserts a claim against Bexar County for failing to protect him from violence at the hands of other inmates. Plaintiff seeks monetary damages. The named Defendants have moved to dismiss the claims against them.

**Standard of Review**

If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law. FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss under 12(b)(6), all factual allegations from the complaint should be taken as true. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Additionally, the facts are construed favorably to the plaintiff. *Id.* Courts may look only to the pleadings in determining whether a plaintiff has adequately stated a claim; consideration of information outside the pleadings converts the motion to one for summary judgment. FED. R. CIV. P. 12(d). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 1964 (2007). Factual allegations must be sufficient to "raise a right to relief above the speculative level." *Id*. In other words, the complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Turner v. Lieutenant Driver*, 843 F.3d 678, 684 (5th Cir. 2017). A well-pleaded complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Twombly*, 550 U.S. at 556.

**Preliminary Issues**

## A.  Bexar County, University Health System, and Official Capacity Claims

Plaintiff has sued Bexar County and the three individual Defendants Cavazos, Scogin, and Doe No. 1 "individually and in [his or her] official capacity as an employee of Bexar County." Docket no. 1 at 1. A suit for damages against a public official in his or her "official capacity" is, in reality, a suit against the governmental entity that employs the official. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (state officers sued for damages in their official capacity assume the identity of the government that employs them); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) (official capacity suits are simply another way of pleading an action against an entity of which an officer is an agent).

Thus, Plaintiff purports to sue each of the individual defendants in their official capacities as employees of Bexar County. However, Bexar County asserts that all medical providers at the jail are actually employed by Bexar County Hospital District d/b/a University Health System ("UHS"), not Bexar County. Thus, Bexar County asserts that Scogin was never an employee of Bexar County and was employed by UHS at all relevant times, and that Defendant Doe No. 1 "would also be a UHS employee since Plaintiff alleges this individual is responsible for processing inmate medical slips and/or determining when inmates will be seen by the medical department at BCADC." Docket no. 6 at 2.

In response, Plaintiff contends that Bexar County is liable for his claims because UHS is a county entity funded principally by the Bexar County Commissioners' Court and is not a sufficiently distinct legal entity "so as to shield the County from liability when it acts with deliberate indifference to the inmates charged to its care." Docket no. 8 at 3.[1] Plaintiff also contends that "Scogin's function providing medical care for inmates confined in a County Owned facility whilst working for a hospital funded by the County adequately support's [*sic*] Plaintiff's allegation that Scogin is an employee of Bexar County for the purposes of this action." *Id.* at 10.

Whether Scogin and Doe No. 1 are in fact employees of Bexar County or of UHS is an issue outside the pleadings, and thus outside the scope of a 12(b)(6) motion. However, as a purely legal matter, the Court agrees with Bexar County that Bexar County and UHS are not legal alter egos. Article 9, § 4 of the Texas Constitution provides that the "Legislature may by law authorize the creation of county-wide Hospital Districts in counties that have a population in excess of 190,000 and in Galveston County, with power to issue bonds for the purchase, acquisition, construction, maintenance and operation of any county owned hospital . . . ." The Interpretive Commentary noted that this amendment permits the creation of a new and

---

[1] Plaintiff further asserts that if Scogin was employed by UHS, she may not claim qualified immunity. *Id.* Plaintiff cites *Harrison v. Ash*, 539 F.3d 510, 525 (6th Cir. 2008). But in that case, the County contracted with Correctional Medical Services to provide services and personnel for the county jail, and the defendant nurses were employees of a private medical provider. The Fifth Circuit has noted that courts are divided on whether privately employed doctors who provide services at prisons or public hospitals pursuant to state contracts are entitled to assert qualified immunity, but recently held that a doctor and nurse who were private individuals working in a public institution alongside government employees could assert the qualified immunity defense in a § 1983 case asserting inadequate medical care and failure to protect. *Perniciaro v. Lea*, __ F.3d __, 2018 WL 3941607 (5th Cir. 2018). In any event, if Scogin was employed by UHS, UHS is a local government entity, not a private employer, making her a government employee entitled to assert the qualified immunity defense. Courts have held that hospital districts are units of local government for purposes of 42 U.S.C. § 1983. *Hill Scott v. Dallas Cty. Hosp. Dist.*, No. 3:08-CV-600-O, 2010 WL 71038, at *6 (N.D. Tex. Jan. 7, 2010) (citing *Brantley v. Pavelka*, No. 3:08-CV-1511-M, 2009 WL 2596612, at *3 (N.D. Tex. Aug. 19, 2009)).

additional governmental unit. The Texas Supreme Court has held that county hospital districts are political subdivisions of the State authorized by the Texas Legislature to "provide for the establishment of a hospital or hospital system to furnish medical aid and hospital care to indigent and needy persons residing in the district." *Klein v. Hernandez*, 315 S.W.3d 1, 7 (Tex. 2010) (quoting TEX. HEALTH & SAFETY CODE § 281.002(a)).

Bexar County provides Texas cases supporting the position that a county and a county hospital district are not legal alter egos. In *Bexar County Hospital District v. Crosby*, 320 S.W.2d 247 (Tex. Civ. App.–San Antonio 1958), *aff'd in part and rev'd in part*, 327 S.W.2d 445 (Tex. 1959), Bexar County Hospital District sued Bexar County "for the purpose of determining the custody and control of certain hospital bond interest and sinking funds and also the proceeds derived from certain delinquent taxes." A legal entity may not sue itself, and thus this case establishes that they are in fact distinct legal entities. Further, in *Laje v. R.E. Thomason General Hospital*, 665 F.2d 724 727 (5th Cir. 1982), the Fifth Circuit recognized that hospital districts are financed through special local taxes entirely separate from other county taxes and through bonds. The Court agrees that Bexar County and Bexar County Hospital District d/b/a University Health System ("UHS") are distinct legal entities. Therefore, it must ultimately be determined which entity employed each individual Defendant.

It appears undisputed that Defendant Cavazos was a Bexar County Deputy employed by Bexar County. Thus, official-capacity claims against Cavazos would in effect be against Bexar County, though they would be redundant of Plaintiff's claims against Bexar County.

Defendants have asserted that Defendant Scogin was employed by UHS, and Plaintiff does not appear to have evidence to dispute that assertion. Thus, if true, official-capacity

claims against her would be against UHS, not Bexar County. Defendants contend that Doe No. 1 likely was also employed by UHS, though it may be too early to tell until Doe is identified. Regardless, at this point in time, Plaintiff has not served UHS because the summons directed to Scogin did not specify any official capacity and Doe No. 1 has not been served. Further, Plaintiff has not put UHS on notice of possible claims because the Complaint alleges only an official-capacity claim against Bexar County. Accordingly, no official-capacity claims against UHS are asserted at this time.

However, the Court may consider the claims against Bexar County, the claims against Cavazos in his individual and official capacities (duplicative of the claims against Bexar County), and the individual capacity claims against Scogin challenged in the pending motions.

**B. Conditions-of-Confinement Claims versus Episodic-Acts-or-Omissions Claims**

The Court must next discuss the law applicable to Plaintiff's claims. Plaintiff alleges that he was arrested and charged with an offense on March 19, and the charge was later dismissed. Thus, Plaintiff was a pretrial detainee at the time of the events in question. Courts considering constitutional challenges by pretrial detainees must begin by deciding whether to classify the challenge as an attack on a condition of confinement or an episodic act or omission. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999).

The constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment. *Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 462 (5th Cir. 2015). In this circuit, the legal standard used to measure the due process rights of pretrial detainees depends on whether the detainee challenges the constitutionality of a condition of his confinement or whether he challenges an episodic act or

omission of an individual officer. *Id.* A challenge to a condition of confinement is a challenge to general conditions, practices, rules, or restrictions of pretrial confinement, and the constitutional issue is whether the condition is reasonably related to a legitimate governmental objective. *Id.* at 463. An episodic-acts-or-omissions claim, in contrast, faults specific jail officials for their acts or omissions. *Id.* In such a case, an actor is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor, and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission. *Id.*

As to the individual in an episodic-acts-or-omissions claim, the relevant question becomes "whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Id.* (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 644, 645 (5th Cir. 1996)). This is a subjective deliberate indifference standard. Deliberate indifference is an extremely high standard to meet. *Sanchez v. Young Cty., Tex.*, 866 F.3d 274, 279 (5th Cir. 2017). A jail official violates a pretrial detainee's constitutional right to be secure in his basic human needs only when the official had "subjective knowledge of a substantial risk of serious harm" to the detainee and responded to that risk with deliberate indifference. In other words, the official must know of and disregard an excessive risk to inmate health or safety. *Estate of Henson*, 795 F.3d at 463 ('[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'")(quoting *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).[2]

---

[2] The Court notes that a Fifth Circuit panel has held that the rule of orderliness requires the courts in this Circuit to continue to apply this standard post-*Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), unless and until the en banc Court decides otherwise. *Alderson*, 848 F.3d at 419 n.4. In light of this, this Court agrees with a recent decision from the Northern District of Texas concluding that the applicable standard remains the *Farmer v.*

Thus, an episodic-acts-or-omissions claim requires a finding that a particular person acted or failed to act with subjective deliberate indifference to the detainee's needs. Normally, "episodic acts liability falls not on the County as employer, but on the individual employees for their particular acts." *Sanchez v. Young Cty., Tex.*, 866 F.3d 274, 279 (5th Cir. 2017). However, a government entity may incur § 1983 liability for episodic acts and omissions injurious to a pretrial detainee if the plaintiff first proves that County officials or employees, acting with subjective deliberate indifference, violated his constitutional rights and then establishes that the County employee's acts resulted from a municipal policy or custom adopted with objective indifference to the detainee's constitutional rights. *Id.* at 280. The County acts with objective deliberate indifference if it promulgates a custom or policy despite the known or obvious consequences that a constitutional violation would result. The County's policy that derives from custom or practice must be "so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*)). The County will almost never be liable for an isolated unconstitutional action on the part of an employee. *Id.*

Although failure-to-provide-medical-care claims are generally brought as episodic-acts-or-omissions claims, a plaintiff may assert a conditions-of-confinement claim based on injuries suffered as a result of not receiving proper medical attention if the plaintiff does not implicate the acts or omissions of individuals but rather the jail's system of providing medical

---

*Brennan*, 511 U.S. 825 (1994) subjective deliberate indifference standard (without any intent-to-harm requirement). *See Dyer v. Fyall*, __ F. Supp. 3d __, No. 3:15-CV-2638-B, 2018 WL 2739025 (N.D. Tex. 2018). However, this Court disagrees that the law concerning Fourteenth Amendment medical inattention claims is not clearly established in this Circuit "given that some Fifth Circuit cases require plaintiffs to show intent to cause harm in medical-inattention cases and others do not." Moreover, Scogin does not argue in her briefing that the law in this area is not clearly established.

care to inmates. *Estate of Henson*, 795 F.3d at 463; *see also Montano v. Orange County*, 842 F.3d 865 (5th Cir. 2016) (case in which detainee suspected of being intoxicated died of acute renal failure after being detained in an observation cell in the infirmary was tried as a conditions-of-confinement case on the theory that the county had a custom of holding incoherent pre-trial detainees suspected of being intoxicated on alcohol or drugs in an observation cell until the detainee was able to fill out book-in paperwork or until the next visit of a contract doctor).

In such cases, the plaintiff establishes a *de facto* policy through evidence such as commissioned reports and consistent employee testimony. "A condition is usually the manifestation of an explicit policy or restriction," but "[i]n some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice." *Shepherd*, 591 F.3d at 452. The Fifth Circuit has further noted that a plaintiff need not prove that another detainee suffered the same fate as a result of a custom or policy, but "isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate." *Montano*, 842 F.3d at 874.

Plaintiff titles his counts as conditions-of-confinement claims and asserts that he was "subjected to an unconstitutional condition of confinement." Docket no. 7 at 2. However, he asserts claims against all defendants "for their actions and omissions under color of law by unlawfully withholding medical services and acting with deliberate indifference to the medical needs of Plaintiff in violation of his individual rights." Compl. ¶ 14. Thus, he also invokes the

language of episodic-acts-or-omissions claims. "[T]here is no rule barring a plaintiff from pleading both alternative theories, and a court may properly evaluate each separately." *Henson*, 795 F.3d at 464.

Plaintiff alleges that the Defendants acted "pursuant to the customs and policies of Bexar County" and violated his rights "by failing to provide proper medical treatment, by failing to protect him and through deliberate indifference to his medical needs, pain, and suffering." Compl. ¶ 15. He further alleges that Defendants "failed to implement and/or practice any policies, procedures, and practices necessary to provide constitutionally adequate medical services to Jerry Rodriguez during his incarceration in the Bexar County Jail and implemented *de facto* policies, procedures, and practices which actually interfered with or prevented Plaintiff from receiving medical services, diagnostic care, and medication" and the "conditions complained of herein were not reasonably related to any legitimate governmental objective, as there is no legitimate governmental objective in failing to perform basic, sanitary first aid, failing to notify nurses and physicians than an infection vector was used to treat wounds, failing to deliver Plaintiff's multiple sick visit request forms to the attention of a physician in a timely manner, disregarding inmates' complaints of pain and illness to the point of not performing necessary diagnostic techniques, threatening inmates who are in a physical state of distress or paralysis, and not referring serious complaints of pain or paralysis to a licensed physician in a timely manner." Compl. ¶ 16. He then purports to set forth the elements of a cause of action against a governmental entity for "the imposition of an unconstitutional condition of confinement," but actually lists the elements for governmental liability in an episodic-acts-or-omission case. Compl. ¶ 17.

Thus, the Court construes the Complaint as attempting to assert both an episodic-acts-or-omissions claim and a conditions-of-confinement claim, but without properly differentiating between the two types of claims. As to the individual Defendants, the Court construes the Complaint as asserting episodic-acts-or-omissions claims because there is no allegation that any individual Defendant implemented a policy. However, the Complaint fails to properly differentiate among the various individual Defendants in alleging the various episodic acts and omissions, lumping them all together in paragraphs 15 and 16. As against Bexar County, the Court construes the Complaint as asserting liability for both episodic acts and omissions and for unconstitutional conditions of confinement.

## Analysis

### A. Defendant Marjorie Scogin

*(1) Rule 12(b)(6) Motion to Dismiss*

Scogin moves to dismiss the claims against her under Rule 12(b)(6) for failure to state a claim. She does not specify whether the 12(b)(6) motion is intended to apply to both her individual and official-capacity claims. Since Bexar County has filed a separate motion to dismiss and since Defendants assert that Scogin was employed by UHS, which has not been named as a defendant in the Complaint and has not yet been served, the Court considers only the individual-capacity claim for failure to provide medical care.

The Complaint alleges with respect to Scogin that she did not respond to Plaintiff's sick-call requests, and did not adequately evaluate/treat him when she did see him in the Medical Bay. It does not allege that Scogin implemented any specific policy, custom, or condition. Although it alleges generally that there is a jail condition of "not referring serious

complaints of pain or paralysis to a licensed physician in a timely manner," the Complaint never alleges that Scogin implemented such a *de facto* policy or custom on a regular or continuing basis as opposed to in this one instance, and thus the Complaint is insufficient to allege a conditions-of-confinement claim against Scogin.

Thus, the claim against Scogin individually is an episodic-act-or-omission claim. *See Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 464-65 (5th Cir. 2015) (characterizing similar claim as episodic act or omission); *Jacobs v. W. Feliciana Sheriff's Dept.*, 228 F.3d 388, 393 n.3 (5th Cir. 2000) ("The claim against the individual defendants is properly analyzed as an 'episodic act or omission' case, as opposed to a 'condition of confinement' case."). To survive the 12(b)(6) motion, Plaintiff must allege facts demonstrating subjective deliberate indifference, meaning that Scogin both knew of and disregarded a substantial risk of serious harm.

Defendant Scogin moves to dismiss the claims against her on several bases: (1) Plaintiff's allegations are essentially claims of medical negligence that are not actionable under § 1983 – the Complaint acknowledges that Scogin saw Plaintiff, evaluated him, and ordered x-rays, and his claim that she did not adequately assess his condition or order additional tests is only medical negligence; (2) the complaints giving rise to a serious medical need occurred after Scogin saw Plaintiff – Plaintiff alleges that his condition worsened on April 3, but does not allege that Scogin saw him after that, refused to see him after that, was advised of a change in his condition, or had any involvement with his care after April 3; and (3) Plaintiff's allegations are conclusory and do not establish that his condition was such that he was developing an epidural abscess or that he complained to Scogin about pain in his back

or hips, a possible broken nose, inability to walk or stand, inability to bend down, neck pain, or other symptoms. Thus, Defendant Scogin contends that Plaintiff fails to allege sufficient facts to support a claim of deliberate indifference to his serious medical needs.

Plaintiff's Response asserts that "Scogin . . . repeatedly ignored medical requests submitted by Rodriguez, and disregarded his symptoms when she finally examined him." Docket no. 7 at 3. Plaintiff asserts that "[t]he limited evidence available to Plaintiff prior to discovery is sufficient to show that Scogin was aware of Rodriguez's suffering and did nothing to alleviate or diagnose the source of his pain and suffering." *Id.* Plaintiff alleges that he sent a sick-call request on March 24, which Scogin received because it has Scogin's name written on the corner. Docket no. 1-2. The request states, "Lower back in pain near my hips. After having an altercation fight with a black male name [sic] Syrus. Need back pain medicine, could barely bend down." *Id.* Plaintiff alleges that Defendant Scogin nevertheless did not visit or bring Plaintiff in to examine his injuries until March 30, despite Plaintiff sending further sick-call requests indicating a serious need for medical attention on March 26, March 28 (twice), and March 29.[3] Compl. ¶ 11. Plaintiff asserts "that Scogin was aware of Rodriguez's pain and suffering and yet did nothing to diagnose, help, ameliorate, or treat him." Docket no. 7 at 4.

Plaintiff's allegations are sufficient to survive the Rule 12(b)(6) motion to dismiss as to his allegations of delayed medical care. To establish liability based on a delay in medical

---

[3] The March 24 request is marked received on March 25. On the March 26 request, Plaintiff wrote, "have broken nose since 3-24-2016. I'm in pain and can't breathe right. Emergency." This request is marked received March 28. On the first March 28 request, he wrote, "I've been asking medical, that I can hardly breathe due to an altercation fight have a broken nose. And Medical has not seen me. What is going on. Please response. Waiting." This request is marked received March 29. On the second March 28 request, he wrote, "having back pain and neck pain. After having an altercation fight 5- days ago." On the March 29 request he wrote, "Severe chest breakage & front & back shoulder breakage. Need serious attention. I'm in severe pain due to any movement." This request is marked received March 30.

treatment, a plaintiff must show deliberate indifference to serious medical needs that resulted in substantial harm. *Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415, 422 (5th Cir. 2017). A plaintiff can show deliberate indifference by showing that an official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* The pain suffered during a delay in treatment or an increase in the risk of infection can constitute a substantial harm and form the basis for an award of damages. *Id.* at 422-23.

Whether a defendant had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Plaintiff has provided circumstantial evidence that Scogin received his March 24 sick-call request, which informed her that he had been in an altercation, was in pain and could barely bend down, and that he requested pain medication. Although Plaintiff contends that Scogin also received his several other sick-call requests, it is unknown without further discovery whether (and when) Scogin received any of the other sick-call requests until the March 29 request, in which Plaintiff stated that he was in severe pain, and after which Plaintiff was brought to the Medical Bay and seen by Scogin. Nevertheless, Plaintiff pleads sufficient facts to plausibly show that Scogin was aware at least on March 25 that he had been in a fight, was in pain, could barely bend down, and was seeking treatment, yet did not call him to the Medical Bay until March 30. If true, a jury could potentially find for Plaintiff on a deliberate indifference claim. *Galvan v. Calhoun Cty.*, 719 F. App'x 372, 375 (5th Cir. 2018) (allegation of refusal of treatment for several days despite complaints of severe pain would entitle plaintiff to relief if proven).

However, Plaintiff's current allegations concerning the lack of proper treatment are insufficient to state a claim, as there is no indication from the pleadings that Scogin was aware of a substantial risk of harm to Plaintiff from infection or abscess on March 30 when she treated him and yet was deliberately indifferent to that risk. Scogin ordered an x-ray and when it did not reveal any fractures, returned him to his cell. The fact that she treated Plaintiff, even if incorrectly, tends to show concern rather than indifference. There are no factual allegations from which to infer that Scogin intentionally treated him incorrectly or was deliberately indifferent to a serious medical need.

Although Plaintiff alleges that Scogin "disregard[ed] [his] complaints of pain and illness to the point of not performing necessary diagnostic techniques" and did not refer "serious complaints of pain or paralysis to a licensed physician in a timely manner," Plaintiff's Complaint fails to allege that Scogin knew of a substantial risk on March 30 that Plaintiff was suffering from a potential spinal infection because it was obvious or that she deliberately ignored such a risk by failing to refer him to a physician or to order more tests. The allegation that "his complaints of severe pain were known and obvious to each of the individual Defendants" is conclusory and fails to establish a plausible basis to conclude that Scogin was aware of a substantial risk to Plaintiff of a spinal infection and was deliberately indifferent by not ordering further tests such as a blood culture or MRI or referring Plaintiff to a physician. Plaintiff asserts in his response that he has alleged that Scogin ignored the observations of officers that witnessed Plaintiff in too weak of a state to stand up and that officers forced Rodriguez to eat off of the floor when he was unable to stand due to his injuries, but there is no allegation in the Complaint that Scogin was aware of this information. Docket no. 7 at 4-5.

Thus, the current allegations fail to establish a claim against Scogin based on her treatment of Plaintiff.

However, as noted, Plaintiff's Complaint does state a claim related to the delay in medical care, as plausible allegations that a defendant's initial response to a detainee's medical needs was to refuse treatment and ignore his complaints constitutes deliberate indifference. *See Alderson*, 848 F.3d at 422 ("This is an allegation that Bryant's initial response to Alderson's medical needs was to refuse treatment and ignore his complaints, which constitutes deliberate indifference."); *see also Galvan v. Calhoun Cty.*, 719 F. App'x 372, 375 (5th Cir. 2018) ("refusing to treat a prisoner's complaints can give rise to Section 1983 liability" and "a four-hour delay in treatment has been considered a sufficient claim of deliberate indifference").

*(2) Motion to Dismiss Based on Qualified Immunity*

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "[Q]ualified immunity constitutes an 'immunity from suit rather than a mere defense to liability.'" *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*) (per curiam). Accordingly, "[q]ualified immunity questions should be resolved 'at the earliest possible stage in litigation,'" usually before discovery. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). Resolving the applicability of qualified immunity as early as possible serves to protect officials not only from unwarranted liability but also from "costly, time-consuming, and intrusive" pre-trial discovery. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Thus,

a motion to dismiss based on qualified immunity must be addressed in addition to any 12(b)(6) motion. *Randle v. Lockwood*, 666 F. App'x 333 (5th Cir. 2016).

In determining whether a defendant is entitled to qualified immunity, courts engage in a two-step inquiry: First, taken in the light most favorable to the plaintiff, do the facts show the officer's conduct violated a constitutional right, and second, was the right in question clearly established at the time of the violation. *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018). The Fifth Circuit "has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense." *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015). First, the district court must determine "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Id.* "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.*; *see also Anderson v. Valdez*, 845 F.3d 580, 589-90 (5th Cir. 2016) (explaining that this is not a heightened pleading standard). When reviewing a complaint that meets this standard, the district court may defer its qualified immunity ruling and order limited discovery if "the court remains 'unable to rule on the immunity defense without further clarification of the facts.'" *Hinojosa*, 807 F.3d at 664. Such a discovery order must be "narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Id.*

The Complaint alleges facts that, if true, not only would establish Scogin's liability for a Fourteenth Amendment violation, but also would be sufficient to overcome a qualified

immunity defense. "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter*, 659 F.3d at 445. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al–Kidd*, 563 U.S. 731 (2011). It is well-established law that state officials have a duty under the Fourteenth Amendment to provide involuntarily detained persons with "basic human needs, including medical care and protection from harm." *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). Thus, a pretrial detainee has a clearly established right not to be denied, by deliberate indifference, attention to his serious medical needs. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5thCir. 1996) (en banc). Moreover, it was clearly established law in March 2016 that a jail medical provider cannot ignore a detainee's complaints of serious pain or refuse to treat him, and thus, if Scogin did so, it was not objectively reasonable in light of clearly established law. Thus, application of the qualified immunity defense in this case turns upon questions of fact.

A district court may elect the defer-and-discover approach "when the defendant's immunity claim turns at least partially on a factual question" that must be answered before a ruling can issue. *Hinojosa*, 807 F.3d at 670. Scogin's knowledge is central to the deliberate indifference element of Plaintiff's claim and is also relevant to qualified immunity, because it bears on the reasonableness of her actions. *See id.* Furthermore, Defendant's "subjective knowledge is a question of fact" that is peculiarly within her knowledge and possession. *Id.*

Accordingly, the Court will deny the motion to dismiss without prejudice at this time, and will permit limited discovery narrowly tailored to the issues of what Defendant Scogin knew about Plaintiff's condition and when she knew it, which days she was working in the Medical Bay, and any factors bearing on whether she was able to have Plaintiff brought to Medical Bay during the period between March 24 and March 30. After such limited discovery, Scogin may re-urge her qualified immunity defense via a motion for summary judgment.

**B. Bexar County and Joe Cavazos's Motion to Dismiss**

*(1) Claims against Joe Cavazos*

Plaintiff alleges that Deputy Cavazos responded to the altercation and, when Plaintiff asked for something to wipe away blood from his face, Cavazos provided a filthy cleaning rag, and then did not inform any of the trained healthcare personnel at the jail that he had "treated" Plaintiff's wounds with a floor rag. Plaintiff alleges that, as a result, he was not provided reasonable medical treatment for his injury, except for an anti-fungal cream used to treat athlete's foot. Compl. ¶¶ 9-10.[4]

Defendants contend that the allegations concerning Deputy Cavazos do not even allege that he provided medical care. Defendants further contend that there is no allegation that the rag was contaminated with bacteria or any other substance that caused Plaintiff's injury, that Cavazos knew the rag was contaminated, or that Cavazos acted with the intent of harming Plaintiff, and that the claim is at best a negligence claim. In addition, Cavazos asserts the defense of qualified immunity.

---

[4] Although Plaintiff asserts that failing to perform basic, sanitary first aid and failing "to notify nurses and physicians that an infection vector was used to treat wounds" are unconstitutional conditions of confinement, there is no indication that these actions were any sort of custom or policy established by Cavazos or anything other than a single episode, and thus this claim is properly characterized as an episodic-act-or-omission claim.

Plaintiff has failed to plead sufficient facts to establish that Cavazos violated his constitutional rights. To establish his claim, Plaintiff must plead facts establishing that Cavazos was actually aware of a substantial risk of serious harm to Plaintiff, and that he responded with deliberate indifference. To meet this standard, a plaintiff must establish more than mere negligence or unreasonable response. *Estate of Cheney v. Collier*, 560 F. App'x 271, 273 (5th Cir. 2014). The pleadings establish that Cavazos responded to the fight and took Plaintiff to the Medical Bay. There is no pleading establishing that Cavazos was aware of any risk of serious harm to Plaintiff, either from the fight, the broken nose, his providing a cleaning rag to Plaintiff in response to Plaintiff's request for something to use to wipe the blood, or his failure to inform medical personnel about the use of the rag. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). Accordingly, Plaintiff fails to state a claim under Rule 12(b)(6), and the Court need not reach Cavazos's qualified immunity defense.

*(2) Claims against Bexar County*

<u>Count I – failure to provide adequate medical care</u>

As noted, the Court construes the claim against Bexar County as asserting both episodic-acts-or-omissions liability and unconstitutional conditions of confinement liability. Because Plaintiff has failed to plead a claim against Cavazos based upon episodic acts or omissions, he also fails to state a claim against Bexar County for municipal liability based on a policy or custom that allowed such a violation to occur. *See Olabisiomotosho*, 185 F.3d at 529 (when claims against the individual defendants fail, the claims against the municipal entity fail

as well). However, the Court does not address the episodic-acts-or-omissions claim against Bexar County based upon the conduct of Scogin and Doe No. 1 until it can be established whether they were employed by Bexar County or UHS and, if it is determined that they were employed by UHS, until the parties brief the issue of whether Bexar County may nevertheless be liable for episodic acts or omissions by UHS employees if it employed a custom or policy that contributed to such acts or omissions.

Plaintiff also pleads unconstitutional conditions of confinement relative to the failure to provide adequate medical care, which would not require him to first prove that any specific individual employee violated his rights. Plaintiff must establish three elements for this claim: (1) a rule or restriction or the existence of an identifiable intended condition or practice or that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of his constitutional rights. *Montano*, 842 F.3d at 874 (citing *Estate of Henson*, 795 F.3d at 468).

Plaintiff's Complaint contends that the alleged actions by the Defendants subjected him to confinement with constitutionally inadequate medical services and medication, such as "medical request forms and medical records that were not recorded, communicated, and not timely transmitted to the proper medical professionals in the Bexar County Jail; unsafe, inhumane, and indecent conditions of confinement such as forcing an inmate to clean his wounds with unsterile rages, forcing an inmate to eat off the floor when he cannot stand, threatening an inmate who cannot stand with physical violence, and denying a patient from accessing sufficient diagnostic tools to identify life-threatening conditions; complete failure to

assess or follow up with ongoing medical concerns, and the custom and practice of treating inmates/detainees complaining of pain with suspicion and skepticism rather than bringing their complaints to the attention of appropriate medical personnel; staffing the jail with physician's assistants and LVNs with no oversight and not staffing the jail with adequate numbers of physicians assistants to have available at all times; resorting to using social workers to serve in the function of medical professionals when staffing constraints make such professionals unavailable; and requiring LVNs to make medical assessments of all inmates without proper licensing, training, or supervision." Compl. ¶ 19.

Some of these alleged conditions appear to be no more than the isolated acts of individuals of which Plaintiff complains, such as the use of an unsterile rag, since there is no factual basis from which to conclude that it was a custom or practice at the jail to clean wounds with unsterile rags. However, some allegations could form the basis for an unconditional conditions claim, such as the allegations concerning delays in transmitting sick-call requests and related to staffing. However, it is unclear at this point which of the various conditions he bases his claim on are under the control of Bexar County versus UHS. Under § 1983, local governments are responsible only for their own acts. *Doe v. United States*, 831 F.3d 309, 318 (5th Cir. 2016). Based on the allegations solely in the Complaint, however, rather than information outside the pleadings, the Court finds Plaintiff's allegations sufficient to state a claim for unconstitutional conditions of confinement related to medical care, and will deny the motion to dismiss at this time.

<u>Count II - failure to protect</u>

Plaintiff asserts a failure-to-protect claim against Bexar County, alleging that (1) he has a documented history of mental health issues, and was suffering from the acute effects of his mental health concerns, including recent methamphetamine use, when he was arrested; (2) due to overcrowding, he was booked into the Bexar County Jail and was placed into a low-risk unit and housed in a "pod" cell with other inmates from the general population; and (3) he was involved in a physical altercation with his cell mate, who is a habitual offender presently serving a prison sentence in the TDCJ.

Plaintiff alleges that Bexar County violated his constitutional rights by failing to house him away from other inmates, deliberately and callously disregarding his mental health history and acute mental health symptoms and by failing to adequately supervise the "pod" unit in which Plaintiff was housed. Compl. ¶¶ 25-26. Plaintiff alleges that the County failed, among other things, to establish and maintain proper protocols to efficiently book, process, and place inmates within the County Jail that were flagged with mental health concerns at the Central Magistrate's Office, failed to account for housing of inmates/detainees with mental health concerns when overcrowding conditions precluded the preferred placement locations, and failed to establish and maintain proper check-up and supervision protocols in multiple-occupant cells, units, and pods to discourage and prevent violence. Compl. ¶ 29. He further alleges that the County acted unconstitutionally by deliberately disregarding Plaintiff's prior history of schizoaffective disorder and substance abuse, placing him in a unit with other inmates when he was suffering with symptoms of withdrawal and mental illness, and failing to supervise Plaintiff's pod or respond in a timely fashion, permitting Plaintiff's attacker the time

to not only bloody Plaintiff's nose, but also place him in a choke-hold that severely injured his spine. Compl. ¶ 30.

Because Plaintiff does not point to any unconstitutional action of a specific employee, this claim is a conditions-of-confinement claim, and he alleges that the County and its employees had a *de facto* policy of improperly placing inmates with severe mental health issues in units posing a substantial risk of serious harm. Compl. ¶ 29a. Bexar County contends that Plaintiff fails to assert facts to support his allegation that Bexar County has a custom or policy of failing to protect inmates, and there are no factual allegations explaining how Bexar County policies, actions, or omissions failed to protect him.

Plaintiff's claim asserting unconstitutional conditions of confinement related to failure to protect is sufficient to survive the 12(b)(6) motion. Paragraph 29 of the Complaint alleges numerous policies alleged to create unconstitutional conditions of confinement that caused Plaintiff's harm with regard to the March 22 altercation. The Rule 12(b)(6) motion is denied.

### Conclusion

Marjorie Scogin's Rule 12b Motion to Dismiss (docket no. 5) is GRANTED IN PART AND DENIED IN PART. The motion is granted as to the improper medical care claim but denied as to the delayed medical care claim. The Court further denies the motion to dismiss based on qualified immunity at this time, but will permit limited discovery on her alleged subjective deliberate indifference as discussed herein and will consider a motion for summary judgment on qualified immunity once such discovery is completed.

Defendants Joe Cavazos's and Bexar County's Motion to Dismiss (docket no. 6) is GRANTED IN PART AND DENIED IN PART. The motion is granted as to all claims against

Joe Cavazos, both in his individual capacity for failure to state a claim and in his official

capacity as redundant of the claims against Bexar County. The motion is denied as to the

claims against Bexar County.

The parties shall submit their proposed scheduling order and Rule 26(f) report by

**October 17, 2018**.

It is so ORDERED.

SIGNED this 17th day of September, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE